1

2

3

4

5               **UNITED STATES DISTRICT COURT**

6                   **DISTRICT OF NEVADA**

7   KIMBERLY D. WEBB,                    )
                                         )       Case No. 2:12-cv-01850-APG-PAL
8                           Plaintiff,   )
                                         )       **REPORT OF FINDINGS AND**
9   vs.                                  )       **RECOMMENDATION**
                                         )
10  CAROLYN W. COLVIN,[1]                )       (Mtn to Reverse - Dkt. #20)
                                         )       (Mtn to Affirm - Dkt. #21)
11                          Defendant.   )
    _____     )

12

13          This case involves judicial review of administrative action by the Commissioner of Social

14  Security denying Webb Kimberly Webb's ("Webb") claim for Supplemental Security Income under

15  Title XVI of the Social Security Act (the "Act").

16                              **BACKGROUND**

17          Webb filed an application for Supplemental Social Security Income ("SSI") under Title XVI of

18  the Social Security Act on December 17, 2009, alleging she became disabled on June 1, 2009.  AR 109-

19  116.  Her claim was denied initially and on reconsideration.  AR 57-60, 62-64.  Webb requested a

20  hearing before an ALJ, and a video conference hearing was held before ALJ Suzanne Lewald on July

21  22, 2011.  AR 47-54.  On October 24, 2011, the ALJ issued a decision denying Webb's application.

22  AR 16-34.  The ALJ's decision became the final decision of the Commissioner when the Appeals

23  Council denied Webb's request for review on July 27, 2012.  AR 8-13.  On September 25, 2012, Webb

24  requested a thirty-day extension to commence this civil action, and that request was granted.  AR 2-7.

25          On October 25, 2012, Webb filed an Application to Proceed In Forma Pauperis (Dkt. #1) and

26  submitted a Complaint (Dkt. #3) in federal court, seeking judicial review of the Commissioner's

27  _____

28          [1]Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on
    February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted for
    Michael J. Astrue as the Defendant in this matter.

1  decision pursuant to 42 U.S.C. § 405(g).  The Commissioner filed her Answer (Dkt. #14) on April 22,

2  2013.  Webb filed a Motion for Remand (Dkt. #20) on May 28, 2013.  The Commissioner filed a

3  Motion to Affirm and Opposition (Dkt. #21) on April 22, 2013, and Webb replied (Dkt. #22) on July

4  16, 2013.  The court has considered the Motion to Remand, the Opposition and Cross-Motion, and the

5  Reply.

6  **DISCUSSION**

7  **I.    Judicial Review of Disability Determination**

8          District courts review administrative decisions in social security benefits cases under 42  U.S.C.

9  § 405(g).  *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).  The statute provides that after

10  the Commissioner of Social Security has held a hearing and rendered a final decision, a disability

11  claimant may seek review of the Commissioner's decision by filing a civil lawsuit in federal district

12  court in the judicial district where the disability claimant lives.  *See* 42 U.S.C. § 405(g).  That statute

13  also provides that the district court may enter, "upon the pleadings and transcripts of the record, a

14  judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with

15  or without remanding the cause for a rehearing."  The Ninth Circuit reviews a decision of a district

16  court affirming, modifying, or reversing a decision of the Commissioner de novo.  *Batson v.*

17  *Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

18          The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42

19  U.S.C. § 405(g); *see also Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the

20  Commissioner's findings may be set aside if they are based on legal error or not supported by

21  substantial evidence.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also*

22  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines substantial evidence

23  as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

24  mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

25  Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005).  In determining

26  whether the Commissioner's findings are supported by substantial evidence, the court "must review the

27  administrative record as a whole, weighing both the evidence that supports and the evidence that

28  / / /

2

1  detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998);

2  *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

3        Under the substantial evidence test, the Commissioner's findings must be upheld if supported by

4  inferences reasonably drawn from the record.  *Batson,* 359 F.3d at 1193.  When the evidence will

5  support more than one rational interpretation, the court must defer to the Commissioner's interpretation.

6   *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Flaten v. Sec'y of Health and Human*

7  *Serv.,* 44 F.3d 1453, 1457 (9th Cir. 1995).  Consequently, the issue before the court is not whether the

8  Commissioner could reasonably have reached a different conclusion, but whether the final decision is

9  supported by substantial evidence.

10        It is incumbent on the ALJ to make specific findings so that the court does not speculate as to

11  the basis of the findings when determining if the Commissioner's decision is supported by substantial

12  evidence.  Mere cursory findings of fact without explicit statements as to what portions of the evidence

13  were accepted or rejected are not sufficient.  *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).

14  The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate,

15  should include a statement of subordinate factual foundations on which the ultimate factual conclusions

16  are based."  *Id.*

17  **II.**    **Disability Evaluation Process**

18        The claimant has the initial burden of proving disability.  *Roberts v. Shalala*, 66 F.3d 179, 182

19  (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996).  To meet this burden, a claimant must demonstrate

20  an "inability to engage in any substantial gainful activity by reason of any medically determinable

21  physical or mental impairment which can be expected . . . to last for a continuous period of not less than

22  12 months."  42 U.S.C. § 423(d)(1)(A).  The claimant must provide "specific medical evidence" to

23  support his or her claim of disability.  If a claimant establishes an inability to perform his or her prior

24  work, the burden shifts to the Commissioner to show that the claimant can perform other substantial

25  gainful work that exists in the national economy.  *Batson*, 157 F.3d at 721.

26        The ALJ follows a five-step sequential evaluation process in determining whether an individual

27  is disabled.  *See* 20 C.F.R. § 416.920; *see also Bowen v. Yuckert,* 482 U.S. 137, 140 (1987).  If at any

28  step, the ALJ makes a finding of disability or non-disability, no further evaluation is required.  *See* 20

3

C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA").  *See* 20 C.F.R. §§ 404.1520(b) and 416.920(b).  SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit.  *See* 20 C.F.R. §§ 404.1572(a)-(b) and 416.972(a)-(b).  If the individual is currently engaging in SGA, then a finding of not disabled is made.  If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically-determinable impairment that is severe or a combination of impairments that significantly limits him or her from performing basic work activities.  *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c).  An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work.  *See* 20 C.F.R. §§ 404.1521 and 416.921; Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[2]  If the individual does not have a severe medically-determinable impairment or combination of impairments, then a finding of not disabled is made.  If the individual has a severe medically-determinable impairment or combination of impairments, then the analysis proceeds to the third step.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appedix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. §§ 404.1509 and 416.909), then a finding of disabled is made.  *See* 20 C.F.R. §§ 404.1520(h) and 416.920(h).  If the individual's impairment or

/ / /

---

[2] SSRs are the SSA's official interpretations of the Act and its regulations.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1).  They are entitled to some deference as long as they are consistent with the Act and regulations.  *See Bray,* 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

1  combination of impairments does not meet or equal the criteria of a listing or meet the duration

2  requirement, then the analysis proceeds to the next step.

3       Before considering step four of the sequential evaluation process, the ALJ must first determine

4  the individual's residual functional capacity ("RFC"). *See* 20 C.F.R. §§ 404.1520(e) and 416.920(e).

5  RFC is a function-by-function assessment of the individual's ability to do physical and mental work-

6  related activities on a sustained basis despite limitations from impairments. *See* SSR 96-8p. In making

7  this finding, the ALJ must consider all the relevant evidence such as symptoms and the extent to which

8  they can reasonably be accepted as consistent with the objective medical evidence and other evidence.

9  *See* 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p and 96-7p. To the extent that statements about

10 the intensity, persistence, or functionally limiting effects of pain or other symptoms are not

11 substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the

12 individual's statements based on a consideration of the entire case record. The ALJ must also consider

13 opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs

14 96-2p, 96-5p, 96-6p, and 06-3p.

15      The fourth step requires the ALJ to determine whether the individual has the RFC to perform his

16 past relevant work ("PRW"). *See* 20 C.F.R. §§ 404.1520(f) and 416.920(f). PRW means work

17 performed either as the individual actually performed it or as it is generally performed in the national

18 economy within the last fifteen years or fifteen years prior to the date that disability must be established.

19 In addition, the work must have lasted long enough for the individual to learn the job and to perform it

20 as SGA. *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), and 416.965. If the individual has the

21 RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to

22 perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and final step.

23      Step five requires the ALJ to determine whether the individual is able to do any other work

24 considering his residual functional capacity, age, education, and work experience. 20 C.F.R.

25 §§ 404.1520(g) and 416.920(g). If he or she can do other work, then a finding of not disabled is made.

26 Although the individual generally continues to have the burden of proving disability at this step, a

27 limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is

28 / / /

1    responsible for providing evidence that demonstrates that other work exists in significant numbers in

2    the national economy that the individual can do.  *Yuckert*, 482 U.S. at 141-42.

3    **II.     Factual Background.**

4           **A.     Testimony at Administrative Hearing.**

5           An administrative hearing was held in San Francisco, California, before ALJ Susanne Lewald

6    on July 22, 2011.  AR 47.  Webb appeared via video teleconference from Henderson, Nevada, with her

7    representative.  AR 48, 67.  The ALJ noted that there were no treatment records for Webb for the last

8    year or longer.  AR 50.  Counsel submitted additional records from Las Vegas Family Clinic and

9    indicated he had requested updates.  AR 49.  Webb was given thirty days to submit these additional

10   records.  *Id.*

11          Webb testified that over the twelve months preceding the hearing, she was prescribed and took

12   Geodon and Wellbutrin.  AR 50.  She testified that they were "working fine" to treat her hallucinations,

13   anxiety, paranoia, and loss of concentration.  *Id.*  She described her hallucinations as seeing things and

14   hearing voices.  *Id.*  She testified that she was hospitalized for psychiatric issues prior to the alleged

15   onset date in 2008.  AR 50.  She has been treating with Dr. Leslie Dickson, a psychiatrist at Las Vegas

16   Family Clinic, since 2008 or 2009.  AR 50-51.

17          Dr. Houston was asked whether he an opinion based on his review of the medical records and

18   Webb's testimony regarding whether Webb had any medically determinable mental impairments .  He

19   testified that there were not any "real treatment records" for the year preceding the administrative

20   hearing.  AR 51.  He therefore limited his testimony to the medical record through March 2010.  AR 52.

21   Dr. Houston testified that Webb tested positive for benzodiazepines, although it did not appear that

22   drug had been prescribed to her.  *Id.*  He noted that Webb denied any substance abuse, and there was no

23   substance abuse diagnosis in the record.  *Id.*

24          Dr. Houston also testified that Webb met Listings 12.03 and 12.04.  AR 52.  He noted that

25   although he had not reviewed the previous twelve months' medical records, the mental impairment

26   "follows a residual disease process, it's chronic.  Records do provide evidence of marginal adjustment."

27   AR 53.  He indicated she met the Listings based on her GAF scores and also events that led to

28   termination of employment, including inappropriate physical altercations with coworkers caused by

1   "paranoid ideation." *Id.*  Dr. Houston found support for his opinion  in medical records related to

2   Webb's admission to the hospital for psychiatric treatment on March 24, 2008, prior to the alleged

3   disability onset date, and in Dr. Semenec's March 15, 2010, consultative evaluation reflecting Webb

4   suffered from psychotic symptoms that interfered with her ability to work.

5          After Dr. Houston testified, the ALJ stated, "I'm going to . . . go with the doctor [Houston] here

6   and find there's a listing level impairment, but unless I get updated records that indicate to me that this

7   is ongoing, I can't make it a fully favorable [decision] at this point." AR 54.

8          There was no testimony at the administrative hearing from any vocational expert.

9          After the hearing, Plaintiff supplemented the AR with medical records from the Prabu-Shete

10  Clinic office dated June 9, 2009, through July 12, 2011 (AR 326-358).  After the ALJ's decision,

11  counsel for Webb provided (a) medical records from Red Rock Medical Center (AR 359-369) dated

12  July 12, 2011, to January 9, 2012; and (b) medical records from Dr. Shivkumar Pandian, M.D., dated

13  November 4, 2011, to January 17, 2012 (AR 370-397) to the Appeals Council.

14         **B.     Webb's Medical Records.**

15         Prior to the alleged onset date, Webb was involuntarily committed to the Adult Services Unit at

16  Montevista Hospital on March 24, 2008.  *See generally* AR 222-227.  Webb was involuntarily

17  committed after as a danger to herself or others following a violent incident with a coworker.  AR 222.

18  This was Webb's first in-patient or out-patient treatment for psychiatric issues.  *Id.*  Webb's sister told

19  the hospital's social worker this was her sister's the first incident of this type, and that Webb had been

20  under a great deal of stress over the previous few months, working in a new job and taking care of her

21  son with cerebral palsy.  AR 225.  Webb was discharged a week later on March 31, 2008, and

22  diagnosed with bipolar disorder, manic.  AR 226.

23         **1.     Webb's Adult Function Report**.

24         Webb completed an Adult Function Report on January 7, 2010.  She reported she suffered from

25  auditory and visual hallucinations that interfered with her ability to work.  AR 171.  Her mental illness

26  negatively affected her sleep.  *Id.*  She cared for her minor son.  AR 171.  She remembered to take her

27  medication daily.  AR 172.  She prepared meals once or twice per month, usually frozen meals, because

28  she found cooking stressful.  *Id.*  She took care of household chores, including laundry, sweeping,

1   mopping, and making beds, although she needed encouragement from family to complete these tasks.

2   *Id.*  Webb could go out alone and was able to drive.  AR 173.  She shopped for groceries and clothing

3   about once per month.  *Id.*  She was able to pay her bills, manage a savings account, count change, and

4   use a checkbook and/or money orders.  *Id.*

5   She reported enjoying reading and watching television, although her inability to concentrate

6   could make both tasks difficult.  AR 174.  She spent time with others a couple of times per week, and

7   she attended church on a regular basis.  *Id.*  She attended her scheduled doctors' appointments alone,

8   but she needed to be reminded of them.  *Id.*

9   She had difficulty getting along with others and had to move because her neighbors called her a

10  crazy person.  AR 175.  She could follow written and spoken instructions.  *Id.*

11  She was terminated from her employment at the Imperial Palace in March 2008 after she hit her

12  supervisor.  AR 176.  She was subsequently hospitalized.  *Id.*

13                    **2.    Bianca Webb - Function Report.**

14  Webb's daughter, Bianca Webb, completed a Function Report concerning Webb on January 11,

15  2010.  She reported that Webb got her disabled son up, ready for school, and on the bus.  AR 178.

16  Webb suffered from visual and auditory hallucinations and was unable to work as a result.  AR

17  179.  Webb's illness negatively affected her sleep, causing her to be awake all night on occasion.  *Id.*

18  Webb's daughter's report mirrors Webb's own report.

19                    **3.    Dr. Leslie Dickson's Records.**.

20  Webb began seeing Dr. Dickson for psychiatric care before the alleged disability onset date,

21  during her psychiatric hospitalization in 2008.  AR 248.  She continued to see Dr. Dickson for follow

22  up care.  *Id.*  In June 2009, however, Dr. Dickson noted that Webb lost her insurance, and her new

23  insurance would not pay for her medication, Effexor.  AR 245.  Webb reported to Dr. Dickson it was

24  not working anyway, and she wanted to try something different.  *Id.*  Dr. Dickson prescribed Geodon

25  and Zoloft.  *Id.*  At Webb's September 2009 appointment, Webb reported she was doing well although

26  her depression was worse.  *Id.*  She told Dr. Dickson she had trouble getting going in the morning, but

27  felt the Zoloft was working and was agreeable to an increase in dosage.  *Id.*  She also reported the

28  Geodon was helping with concentration and focus.  *Id.*

1    Webb reported that she was still hearing voices in December 2009 and January 2010. AR 314.

2    In September 2009 and January 2010, Dr. Dickson's notes reflect that Webb was "doing fine" on her

3    current medications. AR 312. Dr. Dickson's notes reflect that in February and May 2010, Webb was

4    still hearing voices and was having trouble sleeping. AR 313.

5              **4.    Dr. R.D. Prabhu-Lata K. Shete's Clinic Records.**

6              Webb saw a doctor in the clinic on June 3, 2009, requesting a refill of her hypertension

7    medication. AR 248. She denied any visual disturbances although she reported she still suffered from

8    hallucinations. *Id.* She stated she hurt all over, was very sleepy, and her bones felt tired. *Id.* She was

9    assessed with hypertension, hyperlipidemia, multiple myalgias, schizoaffective disorder with

10   hallucinations, and fatigue. AR 251. On June 9, 2009, Webb returned for a follow up appointment.

11   AR 253. The doctor advised Webb that the Abilify was creating problems for her, but she should

12   continue to see her psychiatrist. AR 256.

13             Webb was seen again on November 16, 2009, for a follow up on her lab work. AR 265. She

14   was diagnosed with adult-onset diabetes mellitus and continued hypertension. AR 267.  On December

15   16, 2009, Webb returned for a follow-up visit because her blood sugar was "changing too much." AR

16   269. She also reported her schizophrenia was exacerbated. AR 269.

17             In November 2010, January 2011, March 2011, and May 2011, clinic notes reflect that Webb's

18   blood pressure was well-controlled. AR 334, 339, 344. 349. June 10, 2011, clinic notes reflect that

19   Webb had been doing well and had no real complaints, including no shortness of breath or chest

20   discomfort. AR 330. Webb returned to the clinic for a follow up  appointment on July 12, 2011, ten

21   days before the administrative hearing–for a follow-up appointment. AR 326. She reported that she

22   was doing "much better." *Id.* The record of this visit notes that Webb had "been doing well." *Id.*

23   Webb reported that she was exercising with walking but had not started a non-cardiovascular exercise

24   program. *Id.* No mental health issues were observed or reported. *Id.*

25             Webb saw Jesse Conners, a physician's assistant at the clinic, on January 9, 2012. AR 366. She

26   reported that she had begun a walking exercise regimen to try and reduce her weight. *Id.*

27   / / /

28   / / /

9

1

### 5.    Silvie Semenec's Psychological Evaluation

Webb underwent a psychological evaluation at the request of the Bureau of Disability and Adjudication by Dr. Silvie Semenec, Ph.D., a licensed psychologist.  AR 276.  In drafting her report, Dr. Semenec used information from a May 15, 2010, evaluation of Webb as well as medical records from the Prabu-Shete Clinic, dated June 3, 2009.  *Id.*  Dr. Semenec determined Webb's overall ability to understand, remember, and carry out an extensive variety of complex instructions was "cognitively impaired."  AR 279.  Her overall ability to understand, remember, and carry out detailed but uncomplicated instructions or simple one/two step instructions was "cognitively intact."  *Id.*  Her ability to interact appropriately with supervisors and co-workers was impaired, based on Webb's history.  *Id.*  However, based on Webb's interactions with Dr. Semenec, Webb's ability to interact with supervisors, co-workers, and the general public was unremarkable.  *Id.*  Webb's ability to maintain concentration and attention sufficient to carry out instructions was impaired.  AR 280.  Dr. Semenec opined that Webb "may be able to return to work on a part-time basis within six months to a year depending on the severity of her mental health symptoms.  *Id.*

### 6.    Susan Kolter's Psychiatric Review Technique & Mental RFC Assessment

On April 7, 2010, Dr. Susan Kotler, Ph.D., completed a psychiatric review technique form for Webb.  AR 281.  She found that Webb's schizoaffective disorder caused mild limitations in her activities of daily living and moderate difficulty maintaining social functioning and in maintaining concentration, persistence, and pace.  AR 291.  She concluded Webb's limitations did not meet or equal any mental Listing.  AR 293.

Dr. Kotler also completed a Mental RFC Assessment.  AR 295.  She concluded Webb could understand and remember simple, routine instructions and could sustain attention/concentration for simple tasks in two hour increments.  AR 297.  She found that proximity to others should not be intensive, but Webb could interact appropriately in brief, casual encounters with the public and with co-workers.  *Id.*  Her working environment should limit continuous and prolonged contact with others.  *Id.*  Finally, Webb would be able to respond appropriately to infrequent changes in her work routine.  *Id.*

Dr. Kolter's initial assessments were later confirmed by Jocelyn Fuller, Ph.D., on June 14, 2010. AR 309.

10

7.      **Southern Nevada Adult Mental Health Services ("SNAMHS") Records.**

On June 12, 2009, Webb went to a follow-up appointment for medication compliance and clinic participation.  AR 303.  She reported she had not been taking her medication or participating in clinic visits because she had no transportation and other medical appointments.  *Id.*

On July 16, 2009, Webb was seen by Dr. Richard Hillier.  AR 302.  She told Dr. Hillier that voices were talking to her in her "left ear."  *Id.*  He observed that she was still "having some moderate issues with psychosis."  *Id.*

On November 4, 2011, Webb was seen at SNAMHS, by Dr. Shivkumar Pandian, M.D.  Webb denied symptoms of depressed mood, reported she had no loss of interest or pleasure, or mania.  AR 379.  The notes reflect Webb was tolerating her medication well, and Webb did not report any other concern.  *Id.*  She also denied severe thought disturbance, command hallucinations, and perceptual disturbance.  AR 384.  Dr. Pandian observed that based upon Webb's narration, it appeared Webb has a history suggestive of bipolar disorder with psychotic features rather than schizoaffective disorder.  *Id.*

Webb was seen on January 18, 2012, and she reported that although she had some side effects from her medication, she was feeling better, and she wanted to continue the medication.  AR 395.  She reported she was still hearing voices.  *Id.*

8.      **Dr. George Nickles' Report.**

On July 15, 2010, Webb was seen by George Nickles, M.D., who evaluated Webb's reconsideration claim.  AR 310.  He found that the medical evidence indicated Webb's diabetes was well-controlled by medication, and her hypertension was also under good control.  *Id.*  He wrote that Webb "does not report any work-related limitations due to a physical condition, and the evidence does not establish a physical condition severe enough to limit her ability to work."  *Id.*

9.      **Health Review by Nevada Dept. of Mental Health and Developmental Services**

Webb was seen on December 19, 2011, for a follow-up appointment.  She reported that she heard voices calling her name, and dead people kept her awake at night.  AR 375.  In spite of this, she

/ / /

also reported that she did not experience manic symptoms, delusions, depression, panic attacks, paranoia, or anxiety.  *Id.*  She denied any suicidal or homicidal thoughts.  *Id.*

III.    **The ALJ's Decision.**

The ALJ followed the five-step sequential evaluation process set forth at 20 C.F.R. §§ 404.1520 and 416.920 and issued an unfavorable decision on October 24, 2011.  At step one, the ALJ found that Webb had not engaged in SGA since December 10, 2009.  AR 21.  At step two, the ALJ determined Webb had the following severe impairments: schizoaffective disorder, hypertension, and diabetes mellitus.  *Id.*  She found Webb's history included psychotic and delusional episodes.  *Id.*  Specifically, on March 24, 2008, Webb was involuntarily admitted to the Adult Services Unit at Sunrise Hospital following an incident at work where she yelled at a coworker and asked him not to rape her.  *Id.*  She was diagnosed with psychosis, not otherwise specified, and her Global Assessment of Functioning indicated "some danger of hurting self or others or occasionally fails to maintain minimal personal hygiene or gross impairment in communication."  *Id.*

At step three, the ALJ determined Webb did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 22.  In making this finding, ALJ specifically found Webb did not meet Listings 12.03 or 12.04.  *Id.*  Additionally, she considered whether the Paragraph B criteria were satisfied.  *Id.*  She found Webb had mild restriction in activities of daily living, that her daily activities were "somewhat greater" than had been generally reported, and they had not been significantly impaired to prevent her from functioning in a work environment.  AR 22-23.

The ALJ gave Webb the "benefit of the doubt" and found she had moderate difficulties in social functioning.  AR 23.  She found Webb was able to interact with others while shopping, attending church, walking, talking on the phone, attending doctor appointments, and generally interacting with others.  *Id.*  With respect to concentration, persistence or pace, the ALJ found Webb could follow instructions and maintain an acceptable level of concentration to perform at least simple tasks.  *Id.*  Finally, the ALJ found that because Webb's mental impairment did not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation, each of extended duration, the Paragraph B criteria were not satisfied.  AR 24.

The ALJ also found the evidence failed to establish the presence of Paragraph C criteria.  *Id.*  Although Dr. Houston testified that the evidence met Paragraph C criteria pursuant to Listings

1   12.03(C)(2) or 12.04(C)(4) based on Webb's Global Assessment of Functioning scores, the ALJ found

2   that because Dr. Houston's opinion did not cover a twelve-month period after the application date, it

3   was "limited in usefulness." *Id.*  Additionally, Webb's more recent medical records reflected that

4   although she was on medication during 2010 and 2011, she was generally "doing fine." *Id.*  Further,

5   Dr. Kotler opined the evidence did not establish the presence of the C criteria. *Id.*

6          At step four, the ALJ determined that Webb had the RFC to perform a full range of light work

7   as defined in 20 C.F.R. 416.967(b), except that Webb had the capacity to perform simple repetitive

8   tasks with limited public contact. *Id.*  In making this finding, she determined that although Webb's

9   medically-determinable impairments could reasonably be expected to cause her symptoms, Webb's

10  statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible

11  to the extent they were inconsistent with the RFC finding. AR 25.  She found the record did not reflect

12  that Webb was functionally unable to work due to her schizoaffective disorder, hypertension, or

13  diabetes mellitus. *Id.*  She found Webb's medical records were consistent with her RFC finding, and

14  the ALJ made detailed findings about the various medical records in the AR.  Specifically, she afforded

15  great weight to the opinions of Dr. Kotler and Dr. Semenec. AR 29-30.  As set forth above, she found

16  Dr. Houston's opinion of limited usefulness. AR 30.  Additionally, she found Webb lacked credibility

17  on several issues and found this was "highly suggestive" that Webb exaggerated her symptoms and was

18  not an "entirely credible witness" at the administrative hearing. *Id.*  Therefore, the ALJ concluded at

19  step four that Webb was capable of performing her past relevant work as a room attendant

20  (cleaner/housekeeping) as actually and generally performed.  AR 31.

21         Accordingly, the ALJ determined at step four that Webb was not under a disability, as defined in

22  the Social Security Act, since December 10, 2009, the date Webb filed her application for Supplemental

23  Security Income benefits. *Id.*

24  **IV.    The Parties' Positions.**

25         Webb asserts that the ALJ's RFC assessment is not supported by substantial evidence.

26  Specifically, she contends the ALJ erred in rejecting the opinion of Dr. Houston, an impartial medical

27  expert who assessed Webb's RFC and found that Webb's mental impairments met Listings 12.03(C)(2)

28  and 12.04(C)(2).  The ALJ rejected Dr. Houston's opinions in favor of Dr. Kotler's, a state agency

1    reviewing physician.  Webb argues that Dr. Kotler reviewed no medical records after her April 7, 2010,

2    review.  Dr. Houston reviewed all Webb's medical record that were part of the AR as of July 22, 2011,

3    hearing.  Additionally, Dr. Houston was subject to cross examination at the administrative hearing.

4    Webb contends that the ALJ's finding that Dr. Houston's opinion was inconsistent with Webb's course

5    of treatment is not a legally sufficient reason for rejecting his opinion.  The ALJ could have submitted

6    post-hearing evidence to Dr. Houston, and she failed to fully and fairly develop the record by not doing

7    so.  Webb asserts the post-hearing evidence reflects Webb's ongoing complaints of mood swings,

8    racing thoughts, irritability, and auditory/visual hallucinations.

9          In response, the Commissioner asserts that the ALJ's RFC assessment is supported by

10   substantial evidence in the AR.  In making the RFC assessment, the ALJ properly rejected Dr.

11   Houston's testimony.  Specifically, in finding Dr. Houston's opinion "limited in usefulness," the ALJ

12   noted that his testimony did not cover a twelve-month period after the application date, and his opinion

13   was inconsistent with medical records submitted to the agency after the hearing.  Instead, the ALJ relied

14   on the state psychological consultant, Susan Kotler, who observed that other than Webb's report of

15   hallucinations and a single psychiatric hospitalization that occurred before the alleged onset date, there

16   was no report of any mental health treatment or description of symptoms in Webb's medical records.

17   The ALJ also found Dr. Kotler's opinion was consistent with and well-supported by the AR, including

18   medical records submitted after the administrative hearing.

19         The Commissioner contends the ALJ properly reviewed the evidence, made findings of fact and

20   conclusions of law, and complied with her statutory obligation to fully develop the record by

21   considering Dr. Houston's testimony with the other available evidence.  Contrary to Webb's assertions,

22   the ALJ found Dr. Houston's opinion was inconsistent with Webb's course of treatment and that Webb

23   had not undergone any significant treatment during the alleged disability period.  The ALJ observed that

24   seeking treatment once every four months, as Webb did, "is an indication that claimant's mental

25   impairments are not at a level considered to be disabling."  AR 29.  Furthermore, the ALJ found Dr.

26   Houston's opinion was inconsistent with Dr. Semenec's findings upon examination of Webb.

27         The Commissioner also asserts the ALJ properly addressed the evidence Webb submitted post-

28   hearing.  Webb cited no authority for her contention that the post-hearing evidence should have also

14

1  gone to Dr. Houston for review.  In addition, the post-hearing records themselves belie Webb's

2  disability claim because they show: (a) Webb takes care of her thirteen-year-old son with cerebral palsy;

3  (b) she was employed at Desert Regional Health; (c) her "recent and remote memory is good.  Mood

4  and affect are appropriate;" and (d) she was alert and oriented to time, place and person.  AR 327.  In

5  short, the post-hearing records do not support Webb's contention that she was unable to return to work.

6      Additionally, the post-hearing records establish that Webb was "doing fine" on psychiatric

7  medication during 2010 and 2011.  AR 311-58.  Relying on *Warre v. Comm'r of Soc. Sec'y,* 439 F.3d

8  1001, 1006 (9th Cir. 2005), the Commissioner argues that impairments that are controlled effectively by

9  medication are not disabling for SSI benefits purposes.  Given the content of Webb's post-hearing

10  records, the ALJ was not under any duty to further develop the record because the records supported the

11  ALJ's determination that Webb could work.

12      Finally, the Commissioner argues that the evidence Webb submitted to the Appeals Council

13  supports the ALJ's determination that Webb was not disabled.

14      Webb replies that the ALJ indicated on the record at the hearing that she was going to "go with

15  the doctor," *i.e.,* that she agreed with Dr. Houston's opinion that Webb met a Listing level of

16  impairment.  By so stating, the ALJ implicitly rejected the opinion of Dr. Kotler.  Webb reiterates that

17  at a minimum, the post-hearing evidence should have been submitted to Dr. Houston for his review and

18  opinion, and by failing to do so, the ALJ did not fully develop the record.

19  **V.    Analysis and Findings**

20      Reviewing the record as a whole, weighing both the evidence that supports and the evidence that

21  detracts from the ALJ's conclusion, the court finds the ALJ's decision is supported by substantial

22  evidence, and the ALJ did not commit legal error.

23      **A.    The ALJ Properly Found Dr. Houston's Opinion to be of "Limited Usefulness."**

24      First, Webb argues that the ALJ's erred at step four because her RFC assessment is not

25  supported by substantial evidence in the record.  Specifically, Webb contends that the ALJ improperly

26  rejected Dr. Houston's opinion that Webb mental impairments met Listings 12.03(C)(2) and 12.04

27  (C)(2).  The ALJ determined that Dr. Houston's opinion was "limited in usefulness" because it did not

28  / / /

1    cover a twelve-month period after the application date and was inconsistent with the post-hearing

2    medical records.

3           The ALJ rejected Dr. Houston's opinion in favor of Dr. Kotler's and Dr. Semenec's, finding

4    their opinions were consistent with and well-supported by the AR as a whole.  When presented with

5    conflicting medical opinions, the ALJ must resolve the conflict.  *See Batson v. Comm'r of Social Sec'y*

6    *Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004) (citing *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir.

7    1992)).  The Ninth Circuit has also held that a report of a non-examining, non-treating physician, like

8    Dr. Houston, should be discounted and is not substantial evidence when contradicted by all other

9    evidence in the record.  *See Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989) (internal citations

10   omitted).  Dr. Houston is a non-examining, non-treating medical expert.  He specifically qualified his

11   opinion with the caveat that "there aren't any real treatment records for the past year."  AR 52.  He,

12   therefore, limited his opinion to the available medical record he reviewed through March 2010.  His

13   qualified and limited opinion is also inconsistent with the opinion of consultative examiner Dr.

14   Semenec, who noted some impairment but found Webb put forth inconsistent effort and could likely

15   return to work within six months or a year.  AR 279-80.  Additionally, it was inconsistent with Dr.

16   Kotler, who opined that although Plaintiff did have medically determinable schizoaffective disorder,

17   she only had mild limitations of paragraph C criteria and did not meet a Listing.  The Ninth Circuit has

18   held that the testimony of a nonexamining medical advisor is not, by itself, substantial evidence

19   sufficient to reject the opinion of either an examining or treating physician.  *See Ryan v. Comm'r of*

20   *Soc. Sec'y,* 528 F.3d 1194, 1202 (9th Cir. 2007) (citing *Lester v. Chater,* 81 F.3d 821, 831 (9th Cir.

21   1995)).

22          Dr. Houston's limited opinion is also inconsistent with the treatment notes of treating physician

23   Dr. Dickson, which reflect that although Webb was still hearing voices, she was "doing fine" on her

24   current medications in September 2009 and January 2010.  AR 312.  Dr. Houston's opinion is also

25   inconsistent with Webb's treatment notes from SNAMHS and Prabu-Shete Clinic.  For example, on

26   July 16, 2009, Dr. Hillier observed Webb was still having "moderate issues with psychosis."  AR302.

27   In November 2011, Webb reported she was tolerating her medication well  and denied severe thought

28   disturbance, command hallucinations, and perceptual disturbance.  AR 384.  In January 2012, Webb

1   reported that although she still heard voices, she was feeling better.  AR 395.  Webb made no

2   complaints of mental health issues, and none were observed or noted in Clinic records dated November

3   30, 2010; January 27, 2011; March 10, 2011; June 10, 2011; or July 12, 2011.  AR 350, 345. 335, 331,

4   326-29.  The July 12, 2011, visit was just ten days prior to the administrative hearing.  The records for

5   each of these visits reflect that Plaintiff reported she was working at Desert Regional Health.  *Id.*

6         The ALJ was required to resolve the conflict in the record between the treating and examining

7   physicians' opinions of a non-disabling, conservatively treated condition and Dr. Houston's opinion

8   that Webb was so disabled she met two Listings.  *See Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th

9   Cir. 2001).  Resolving the conflict in favor of the treating and examining physicians was proper and

10  wholly within the ALJ's discretion.  Where the evidence can support either affirming or reversing the

11  decision, the court may not substitute its judgment for that of the Commissioner.  *Parra v. Astrue,* 481

12  F.3d 742, 746 (9th Cir. 2007) (citation omitted).

13  **B.      The ALJ Properly Considered Webb's Post-Hearing Evidence.**

14        Webb asserts that the medical records she submitted after the hearing should have gone to Dr.

15  Houston for review.  Webb cites no authority for this proposition.  Ambiguous evidence or the ALJ's

16  own finding that the record is inadequate to allow for proper evaluation of the evidence triggers the

17  ALJ's duty to conduct an appropriate inquiry.  *See Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir.

18  2001) (internal citations omitted).  The ALJ did not find Webb's post-hearing medical records

19  ambiguous or inadequate.  In fact, the ALJ discharged her duty to develop the record by allowing Webb

20  to submit the medical records after the hearing.  *See, e.g., Tidwell v. Apfel,* 161 F.3d 599, 602 (9th Cir.

21  1998) (ALJ can discharge duty to develop record by keeping record open after hearing to allow

22  supplementation of the record).

23        Additionally, the court has considered the evidence Webb submitted for the first time to the

24  Appeals Council as required by the Ninth Circuit's decision in *Brewes v. Comm'r of Soc. Sec'y,* 682

25  F.3d 1157, 1159-60 (9th Cir. 2012).  In *Brewes,* the Ninth Circuit held that when a claimant submits

26  evidence for the first time to the Appeals Council, the new evidence is part of the administrative record,

27  and the district court must consider it in determining whether the Commissioner's decision is supported

28  by substantial evidence.  The court finds that the new evidence supports the ALJ's decision that Webb

1    is not disabled.  It establishes that Webb sought treatment on five occasions for medication refills,

2    indicating that her medication was working to adequately address her mental health needs.  For

3    example, on November 4, 2011, Dr. Pandian concluded Webb's mood was stabilized with medication,

4    she was tolerating her medication well, and she did not report any other concern.  AR 379.  Webb

5    denied suicidal ideation, severe thought disturbances, command hallucinations, and/or perceptual

6    disturbance.  *Id.*  She told Dr. Pandian she was planning to find a job.  Additionally, Dr. Pandian found

7    Webb's GAF score indicated only mild symptoms.  AR 383.  Although Webb did report hearing voices

8    at her December 2011 and January 2012 appointments, the records reflect that she was doing well and

9    felt better.  AR 366-69, 395.  The court finds that, considering the record as a whole, including the post-

10   hearing records submitted to the Appeals Council, the ALJ's decision is supported by substantial

11   evidence in the AR and should not be disturbed.[3]

12   **VI.**     **Conclusion**

13          Judicial review of a decision to deny disability benefits is limited to determining whether the

14   decision is based on substantial evidence reviewing the administrative record as a whole.  If the record

15   will support more than one rational interpretation, the court must defer to the Commissioner's

16   interpretation.  If the evidence can reasonably support either affirming or reversing the ALJ's decision,

17   the court may not substitute its judgment for the ALJ's.  *Flaten*, 44 F.3d at 1457.  It is the ALJ's

18   responsibility to make findings of fact, drawing reasonable inferences from the record as a whole, and

19   to resolve conflicts in the evidence and differences of opinion.  Having reviewed the Administrative

20   Record as a whole and weighed the evidence that supports and detracts from the Commissioner's

21   conclusion, the court finds that the ALJ's decision is supported by substantial evidence under 42 U.S.C.

22   § 405(g).

23   / / /

24   / / /

25

26          [3]Additionally, Webb reported she was working at Desert Regional Health on January 27, 2011.

27   AR 345.  She also reported she was still so employed on March 10, 2011, and June 10, 2011.  AR 331,
     335.  All three assessments from January 27, 2011; March 10, 2011; and June 10, 2011, revealed no

28   mental issues.  AR 331, 335, 345.

For all of the foregoing reasons,

**IT IS RECOMMENDED**:

1.      Webb's Motion to Remand (Dkt. #20) be DENIED.

2.      The Commissioner's Cross-Motion to Affirm (Dkt. #21) be GRANTED.

Dated this 25th day of September, 2013.


PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

19